IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

BROTHERHOOD OF RAILROAD )
SIGNALMEN, )
)
    Plaintiff, )
)
v. )
)
CSX TRANSPORTATION, INC., )
)
    Defendant. )

Case No. 5:24-cv-50

By:   Michael F. Urbanski
Senior United States District Judge

CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED

March 21, 2025

LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
DEPUTY CLERK

## MEMORANDUM OPINION

    The Brotherhood of Railroad Signalmen filed a petition for review, under Section 153 First(q) of the Railway Labor Act, 45 U.S.C. §153 First(q), of an arbitration award issued by the National Railroad Adjustment Board. The case is presently before the court on cross-motions for summary judgment filed by the Brotherhood of Railroad Signalmen and defendant CSX Transportation, Inc. See ECF Nos. 6, 24. The court held a hearing on these motions on January 29, 2025. See ECF No. 32. For the reasons set forth below, plaintiff's motion for summary judgment, ECF No. 6, is **DENIED**, and defendant's motion for summary judgment, ECF No. 24, is **GRANTED**.

## I.   Background

    This case arises out of an earlier case brought before the court in 2020. See Case No. 5:20-cv-16 (W.D. Va.). In 2020, the Brotherhood of Railroad Signalmen ("BRS") filed suit against CSX Transportation, Inc. ("CSX"), for an alleged violation of a collective bargaining agreement between BRS and CSX. See ECF No. 34, No. 5:20-cv-16, at 2 (W.D. Va. Dec. 8, 2020) (hereinafter "2020 Opinion"). At that time, the court summarized the dispute as follows:

BRS is the designated collective bargaining representative for railroad employees working in the signalman class under Section 1, Sixth of the Railway Labor Act ("RLA"). … CSX is a rail carrier as defined by Section 1, First of the RLA, which comprises various regional carriers and operates throughout the eastern half of the United States. … CSX employs BRS signalmen to perform installation, maintenance, and repair of railroad signal systems and highway-rail crossing warning systems on CSX railways as well as to refurbish and reclaim CSX's signal equipment. … A series of collective bargaining agreements governed this employment relationship, establishing rates of pay, rules, and working conditions for signalmen employees … The signalmen had maintained separate collective bargaining agreements with each of the formerly independent regional carriers as well as a consolidated collective bargaining agreement with CSX, the parent company…

[A]t issue in this case are the terms of one of these regional collective bargaining contracts, the Seaboard Coast Line Railroad Agreement ("SCL Agreement"), which governs the pay, rules, and working conditions for Signalmen working in the Savannah Signal Shop. … [T]he signalmen at issue in this case are governed by the Implementing Agreement signed by all the formerly independent railroads when they merged into CSX on April 14, 1987, which was subsequently incorporated into the SCL agreement… The terms of the Implementing Agreement have been amended over time by the parties through memoranda of understanding, addendums, among other things, to reflect changes in shifts, seniority, and staffing issues …

The Savannah Signal Shop performed all refurbishment and reclaiming of signal equipment for the entire CSX system until February 14, 2020, when all positions within the Shop Refurbishment Section were abolished. … This change was communicated by CSX Labor Relations to Gus Demott, BRS Southeast General Committee Chairman in an email sent February 7, 2020. … The change resulted in the termination of sixteen contractor positions, one clerical position, and one position that was scheduled to be abolished upon the retirement of the employee. … On February 13, 2020 BRS President Jerry Boles sent a letter by email and overnight delivery to CSX Labor Relations that if CSX had refurbishing/reclaiming work done by contractors or otherwise sent off CSX property, then BRS will consider that to be an abrogation of the Implementing Agreement. … CSX has not responded. … At the time the positions were abolished, the Savannah Signal Shop was in possession of CSX equipment ready to be refurbished. …

BRS states that because CSX has equipment ready for refurbishment on its properties, including at the Savannah Signal Shop, and because CSX no longer employs signalmen, it must rely on persons other than BRS signalmen to do work off of the Carrier's property, in violation of the agreement. … CSX argues that it has historically either (1) repaired signal equipment on site, (2) sent equipment to be refurbished/reclaimed to the Savannah Signal Shop, or (3) purchased replacement equipment, either new or refurbished, by outside companies. … It claims that its decision to shut down the Shop

> Refurbishment Section of the Savannah Signal Shop does not mean it will be employing contractors to refurbish its equipment, but that it would be expanding its existing practice of purchasing third party refurbished equipment as replacements for parts it cannot fix on site. ... In short, CSX claims it will continue with options (1) and (3) in dealing with equipment in need of repair, but not option (2), which involved the Savannah Signal Shop...

Id. at 2-5 (internal citations omitted). In the 2020 case, the parties cross-moved for summary judgment. CSX argued that, as a threshold matter, the court lacked subject matter jurisdiction over the dispute because the claims at issue constituted a "minor" dispute subject to mandatory and binding arbitration before the National Railroad Adjustment Board (NRAB). See id. at 8. The court agreed, finding that "the dispute is minor because the parties do not seek to generate new rights, but rather enforce existing rights under the contracts." Id. at 12. The court then dismissed the complaint. See Order, ECF No. 35, No. 5:20-cv-16 (W.D. Va. Dec. 8, 2020).

Following grant of summary judgment, BRS filed a grievance on January 18, 2021, under the procedure established in the collective bargaining agreement at issue ("the agreement"). See ECF No. 1, No. 5:24-cv-50, at ¶4 (hereinafter "Petition"); ECF No. 7, No. 5:24-cv-50, at ¶11 (hereinafter "BRS MSJ"); SAR0001. Notably, the agreement requires that all claims or grievances be filed within sixty days "from the date of the occurrence on which the claim or grievance is based." SAR0091. The agreement's claims and grievances section is reproduced below:

**Uniform Rule 3**
Claims and Grievances

a) All claims and grievances, except for continuing claims (as provided in (d) below) and those involving discipline must be presented in writing, by the employee or on his behalf by a BRS representative, to the designated Carrier officer authorized to receive same within sixty (60) calendar days from the date of the occurrence on which the claim or grievance is based. Should any such claim or grievance or be denied, the Carrier shall, within sixty (60) calendar days from the postmark date*, notify whoever filed the grievance or claim (employee or his representative) in writing of such denial. If not so notified, the claim shall be allowed as presented.

b) A grievance or claim denied in accordance with paragraph (a) shall be considered closed unless it is appealed in writing to the Highest Designated Officer, by the employee or his BRS representative within sixty (60) calendar days after the date it was denied*. When a grievance or claim is not allowed, the Highest Designated Officer will so notify, in writing, whoever listed the grievance or claim (employee or his representative) within sixty (60) calendar days* after the date of appeal of the reason therefore. When not so notified, the claim will be allowed as presented. A grievance or claim will be discussed in a conference on a mutually agreed upon date.

c) A grievance or claim denied in accordance with paragraph (b) will be considered closed

4

unless within nine (9) months from the postmark date of the decision* of the Highest Designated Officer proceedings are instituted before the National Railroad Adjustment Board or such other Board as may be legally substituted therefore under the Railway Labor Act.

d) A claim may be filed at any time for an alleged continuing rule violation and all rights of the claimant or claimants involved thereby, shall under this rule, be fully protected by the filing of one claim based thereon as long as such alleged violation, if found to be such, continues. However, no monetary claim shall be allowed retroactively for more than sixty (60) calendar days prior to the filing thereof. *

e) Failure to comply with the time limits of this rule shall not be considered as a precedent or waiver of the contentions of either party as to other similar claims or grievances. The time limits at any stage of handling may be extended by written agreement between the Highest Designated Officer and the Union representative.

*NOTE: It is understood and agreed that all notices referred to in this Rule may be served through electronic medium. The date/time stamp of the transmission directed to the last known email address of party for whom notice is intended will be considered proper notice. When a Courier is utilized, the tracking information of that Courier will govern time limits compliance.

See Side Letter #1 for application of Uniform Rule 3 to the C&O and L&N properties.

Id. at SAR0091-92.

BRS filed its 2020 complaint with the district court within the applicable sixty-day window. Once the district court ruled on summary judgment on December 8, 2020, BRS filed its claim under the grievance procedure of the parties' agreement within sixty days, on January 18, 2021. See BRS MSJ ¶11; SAR0001-04. CSX responded to BRS's grievance on March 18, 2021, by asserting that the claim was untimely since it was filed more than sixty days after February 14, 2020, the date by which CSX argued the underlying claim arose. Id. ¶12; SAR0057-60. BRS appealed CSX's decision to CSX, but CSX affirmed its denial. See SAR0046-52 (BRS's May 10, 2021 appeal to CSX); SAR0053-56 (CSX's May 18, 2021 denial of BRS's appeal); SAR0061-64 (same); see also ECF No. 1-2, No. 5:24-cv-50, at 2 (hereinafter

"Award") (noting "Carrier [CSX] denied the claim in a letter dated May 18, 2021"). BRS then moved the claim to arbitration before the NRAB, and CSX reiterated its argument that BRS's claim was untimely and must be dismissed. BRS MSJ ¶13; see also SAR0007 (BRS's ex-parte submission to the NRAB); SAR0065 (CSX's ex-parte submission to the NRAB). The NRAB deadlocked on the dispute, and a neutral arbitrator was appointed to break the deadlock and render an award. Petition ¶4. On May 14, 2024, the NRAB issued an award dismissing as untimely BRS's claim. BRS MSJ ¶14; Award at 5-6. The NRAB noted "persuasive" precedent presented by CSX that the filing of a court action does not toll the time period for filing a claim under the arbitration system. Petition ¶4; see also Award at 5-6. The NRAB did not explicitly hold that BRS's claim was not tolled by filing in district court; rather, the NRAB stated, "[t]his Board's jurisdiction arises from the collective bargaining agreement and we have no power to alter or ignore provisions negotiated by the parties. The claim must be dismissed as untimely." Award at 6.

On July 8, 2024, BRS filed a petition for review and vacation of the arbitration award. See generally Petition. In its petition, BRS seeks an order vacating the Award under Section 153 First(q) of the Railway Labor Act, arguing that the NRAB failed to comply with the requirements of the RLA by improperly refusing to assert jurisdiction to decide an issue that it had mandatory and exclusive jurisdiction to decide, and, therefore, that the NRAB failed to conform or confine itself to matters within its jurisdiction. Petition ¶5. On July 24, 2024, BRS moved for summary judgment on its claim, arguing that the NRAB failed to comply with the requirements of the RLA and failed to conform itself to matters within its jurisdiction; and that CSX is judicially estopped from arguing that the grievance was untimely. See BRS MSJ.

For its first two arguments, BRS relies heavily on Consolidated Rail Corp. v. Ry. Labor Execs.

Ass'n, 491 U.S. 299 (1989) (hereinafter "Conrail"), to counter CSX's arguments before the

NRAB, which the NRAB cited in the Award and which CSX's reiterates in its briefs before

the court, that Union Pacific R. R. v. Sheehan, 439 U.S. 89 (1978) (hereinafter "Sheehan"), is

clear that matters are not tolled when filed before district courts instead of the NRAB. As to

its third argument, BRS argues that under the factors in New Hampshire v. Maine, 532 U.S.

742 (2001), CSX is judicially estopped from defending the NRAB's award. BRS bases its

judicial estoppel theory around CSX's argument in the 2020 lawsuit that the NRAB had

exclusive jurisdiction over BRS's claim. To BRS, because the 2020 district court relied on

CSX's argument that the NRAB had exclusive jurisdiction, and then CSX subsequently argued

before the NRAB that the claim was untimely, CSX tacitly misled the district court.

On July 31, 2024, CSX answered the petition. ECF No. 11, No. 5:24-cv-50 (hereinafter

"Answer"). CSX then moved for summary judgment on September 13, 2024. ECF No. 25,

No. 5:24-cv-50 (hereinafter "CSX MSJ"). CSX argued it was entitled to summary judgment

because the NRAB acted within its jurisdiction and complied with the requirements of the

RLA. See generally CSX MSJ. CSX noted that the grounds for reversal of an arbitral award

are extremely narrow, and no grounds are present on which to vacate the award. Id. CSX also

filed its opposition to BRS's motion for summary judgment on the same day. ECF No. 26,

No. 5:24-cv-50 (hereinafter "CSX Opp."). CSX's opposition employs largely the same

arguments as its motion for summary judgment, but adds that judicial estoppel is not

applicable and, even if it were, it is not grounds to vacate an arbitral decision. See id. at 9-13.

On October 15, 2024, BRS filed a brief opposing CSX's motion for summary judgment and replying in support of its own motion. ECF No. 29, No. 5:24-cv-50 (hereinafter "BRS Opp./Reply"). BRS spent its brief distinguishing Conrail and Sheehan, and arguing the NRAB did not conform itself to its jurisdiction. See id.

CSX filed a reply in support of its motion on November 12, 2024. ECF No. 30, No. 5:24-cv-50 (hereinafter "CSX Reply"). In its reply, CSX restates its arguments regarding Conrail and Sheehan, and argues that the NRAB complied with the requirements of the Railway Labor Act. See id.

The court heard argument on these motions on January 29, 2025. See ECF No. 32.

## II.   **Legal Standard**

Under Federal Rule of Civil Procedure 56, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the

non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly-Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.

The non-moving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). The non-moving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (quoting Anderson, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the

inferences to be drawn from" those facts. World-Wide Rights Ltd. P'ship v. Combe Inc., 955

F.2d 242, 244 (4th Cir. 1992).

## III.   Discussion

The court has jurisdiction in this case pursuant to the Railway Labor Act ("RLA"), 45

U.S.C. § 153 First(q), which provides federal district courts jurisdiction to review and vacate

arbitral awards under the RLA. See Petition ¶8; Answer ¶8 (agreeing the court has jurisdiction).

The court addresses each issue raised by the Petition in turn.

### A.   Arbitral Award

"[I]t must be noted that the scope of judicial review of a railway labor arbitration panel's

award has been described as 'among the narrowest known to the law.'" Norfolk & W. Ry. Co.

v. Bhd. of Ry., Airline & S. S. Clerks, Freight Handlers, Exp. & Station Emp., 657 F.2d 596,

599-600 (4th Cir. 1981) (quoting Diamond v. Terminal Rwy. Alabama State Docks, 421 F.2d

228, 233 (5th Cir. 1970)); Sheehan, 439 U.S. at 93. A district court may set aside an award "for

failure of the division to comply with the requirements of [the RLA], for failure of the order

to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for

fraud or corruption by a member of the division making the order." 45 U.S.C. § 153 First(q);

see also CSX Transp., Inc. v. Transp. Commc'ns Int'l Union, 480 F.3d 678, 682 (4th Cir. 2007)

("Only three grounds exist for setting aside an NRAB award: (1) failure to comply with the

requirements of the Railway Labor Act; (2) failure of the NRAB to conform or confine itself

to matters within the scope of its jurisdiction; and (3) fraud or corruption by a member of the

NRAB division making the order."). As the Fourth Circuit noted:

> Under this standard, a court "may not overrule an arbitrator's decision simply because
> it believes its own interpretation of the contract would be the better one." … It may

reverse an arbitral decision as in excess of a board's jurisdiction only where the arbitration board's order "'does not draw its essence from the collective bargaining agreement,'" …, or its interpretation of the contract is "wholly baseless and completely without reason," … Of course, an award that ignores the plain and unambiguous language of the arbitration contract does not "draw its essence" from the agreement, and may therefore be overturned under the RLA. ... But "[a]s long as the arbitrator is even arguably construing or applying the contract," the arbitrators' award must not be disturbed. …. As the Seventh Circuit characterized the standard: "The test is not error; it is ultra vires."

Norfolk & W. Ry. Co. v. Transp. Commc'ns Int'l Union, 17 F.3d 696, 699-700 (4th Cir. 1994) (internal citations omitted). The Fourth Circuit has also stated that "[e]very presumption is in favor of the validity of the award." Richmond, Fredericksburg & Potomac R. Co. v. Transp. Commc'ns Int'l Union, 973 F.2d 276, 278 (4th Cir. 1992) (quoting Burchell v. Marsh, 58 U.S. (17 How.) 344, 351, 15 L.Ed. 96 (1855)).

Despite this narrow standard, numerous courts have vacated arbitral awards. See, e.g., Baltimore & Ohio R.R. Co. v. Bhd. of Ry. Airline & S.S. Clerks, 813 F.2d 1227 (4th Cir. 1987); Int'l Union, United Mine Workers of Am. v. Marrowbone Dev. Co., 232 F.3d 383 (4th Cir. 2000); Continental Airlines v. Int'l Bhd. of Teamsters, 391 F.3d 613 (5th Cir. 2004); BNSF Ry. v. Bhd. of Maint. of Way Emps., 550 F.3d 418, 421(5th Cir. 2008); Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region, 558 U.S. 67 (2009). For example, in Baltimore & Ohio R.R. Co. v. Bhd. of Ry. Airline & S.S. Clerks, 813 F.2d 1227 (4th Cir. 1987) (unpublished table decision), the Fourth Circuit affirmed the district court in vacating an NRAB panel decision on the basis that the panel had exceeded its jurisdiction by ignoring critical language in the collective bargaining agreement. Id. at *1. The Fourth Circuit noted that, "where an arbitrator fails to discuss, in his decision, critical contract terminology, which might reasonably require the opposite result, the award cannot be

considered to draw its essence from the contract," and thus may be vacated. Id. at *4 (citing

Clinchfield Coal v. District 28, UMW, 720 F.2d 1365 (4th Cir. 1983)).

In Int'l Union, United Mine Workers of Am. v. Marrowbone Dev. Co., 232 F.3d 383

(4th Cir. 2000) (hereinafter "UMWA"), the Fourth Circuit affirmed a district court vacation

of an arbitral award where the plaintiff did not receive a full and fair hearing. See id. at 385. In

that case, which dealt with an award issued by a National Labor Relations Board ("NLRB")

arbitrator, the Fourth Circuit found that the arbitrator had issued an arbitration award that did

not draw its essence from the underlying collective bargaining agreement, as the arbitrator had

not comported with his role as defined by that agreement and also had issued an award that

contravened the agreement's plain language. Id. at 388-389.  The Fourth Circuit further found

that the arbitrator had denied the plaintiff a full and fair hearing because the arbitrator issued

an award without affording the plaintiff an opportunity to present additional evidence, which

the arbitrator had told the plaintiff to gather. See id. at 390. UMWA highlights that a district

court may vacate an arbitral award where the arbitrator does not conform to the underlying

collective bargaining agreement.

Other circuit cases are also instructive. In Continental Airlines v. Int'l Bhd. of

Teamsters, 391 F.3d 613 (5th Cir. 2004), the Fifth Circuit reversed a lower court decision

affirming an arbitral award. Continental Airlines dealt with an arbitral award reinstating an

airline employee who tested positive for alcohol and was subsequently terminated. Id. at 615-

616. The employee at issue was subject to an agreement which stated the employee could not,

for a one-year period, ingest alcohol, illicit drugs, and "mouthwash or other

medications/substances which may contain alcohol" unless the employee was prescribed the

medications by a doctor and informed his employer. Id. The arbitral panel found that, even though the employee had testified positive for alcohol after ingesting cough medicine, the employee had not violated the underlying agreements because the employee had left a voicemail for his employer advising them he was taking cough medicine, and that, though he had not been prescribed the medication by a doctor, his doctor's office's approval of the employee taking the medicine satisfied "the letter and spirit" of the underlying agreement. Id. at 615-616, 619. The airline sought review of the award, but the district court affirmed. Id. at 615-616. The Fifth Circuit reversed, finding that the arbitral panel had effectively changed the agreement "[b]y failing to require proof of a doctor's order," as doing so "effectively reads 'doctor' out of the [underlying] agreement." Id. at 620. In other words, the Fifth Circuit found that the arbitral panel had failed to abide by the contract language.

In BNSF Ry. v. Bhd. of Maint. of Way Emps., 550 F.3d 418 (5th Cir. 2008), the Fifth Circuit affirmed the lower court's vacation of an NRAB award where the NRAB panel ignored an element of the underlying agreement when issuing the award. In that case, the NRAB panel issued an award, followed by two interpretations of that award. See id. at 424-425. In doing so, the NRAB adopted an adverse inference that certain subcontracting had increased, but the NRAB failed to make a finding that certain furloughs were the direct result of that increased subcontracting. Id. The NRAB therefore failed to conform itself to the language of the underlying collective bargaining agreement, which required a specific finding that the furloughs were a direct result of increased subcontracting. Id. This case demonstrates that an arbitral award can be vacated due to nonconformance with a collective bargaining agreement.

13

The Supreme Court has also affirmed reversals of arbitration awards. For example, in Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region, 558 U.S. 67 (2009) (hereinafter "UPRC") the Supreme Court dealt with a set of cases where the underlying NRAB panel declared that a procedural rule raised by a panel member was jurisdictional in character such that the panel must dismiss the cases. Id. at 71-72. The procedural rule at issue, which the panel member raised sua sponte, originates from 45 U.S.C. § 152 Second and Sixth, and relates to whether the parties had sufficiently substantiated that they met a conferencing requirement. Id. at 76-77, 82. The arbitration panel dismissed the underlying cases for failure to substantiate the conferencing requirement prior to the evidentiary record closing. Id. at 77. The district court affirmed the arbitration panel's decisions, but the Seventh Circuit reversed on due process grounds, finding that the NRAB's proceedings were incompatible with due process as the NRAB, on its own, created a new jurisdictional requirement for arbitration, that did not arise from the collective bargaining agreement or the RLA. Id. at 78-79; see also Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R. Co., 522 F.3d 746, 757 (7th Cir. 2008), aff'd, 558 U.S. 67 (2009). The Supreme Court held that the Seventh Circuit should have reversed on statutory grounds, but agreed that the arbitration decision must be reversed, as "nothing in the [RLA] elevates to jurisdictional status the obligation to conference minor disputes or to prove conferencing. That being so … the panel, in § 153 First (q)'s words, failed 'to conform, or confine itself, to matters within the scope of [its] jurisdiction.'" Id. at 79-81; see also id. at 83 ("the conference requirement is stated in the '[g]eneral duties' section of the RLA, § 152, a section that is not moored to the '[e]stablishment[,] ... powers[,] and duties' of

the NRAB set out next in § 153 First. Rooted in § 152 and often informal in practice, …
conferencing is surely no more 'jurisdictional' than is the presuit resort to the EEOC held
forfeitable in [Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982)]. And if the requirement
to conference is not 'jurisdictional,' then failure initially to submit proof of conferencing
cannot be of that genre."). The Supreme Court also held that it was leaving open the question
of whether a district court may set aside an NRAB adjudication for "incompatibility with due
process." Id. at 80-81.

Relevant here too are the Supreme Court's decisions in Conrail and Sheehan. In
Conrail, the Supreme Court held that the case before the Court was a minor dispute, and thus
subject to the exclusive jurisdiction of the NRAB. 491 U.S. at 320. In doing so, the Court
examined the concept of minor and major disputes, and how the courts and parties are to
discern which is which. In Sheehan, a case decided earlier than Conrail, the Supreme Court
held that an NRAB ruling dismissing the plaintiff's claim as time-barred should stand where
that plaintiff had filed a state court action on the issue, an intervening Supreme Court case
came down ruling these types of cases must go before the NRAB, and the plaintiff
subsequently dismissed his state court case and filed before the NRAB, but was outside the
time limits of the relevant collective-bargaining agreement. 439 U.S. 89. The Court held that
whether or not the time limitation of the collective-bargaining agreement was tolled by the
filing of the plaintiff's state-court action was a matter uniquely before the NRAB, and not
subject to judicial review by the district court because of 45 U.S.C. § 153 First(q)'s narrow
limitation of judicial review. Id. at 93-94.

Against this backdrop, BRS puts forth two main arguments as to why it is entitled to vacation of the Award by the district court: first, that the NRAB failed to perform its statutory duty and/or comply with the requirements of the RLA by refusing to decide BRS's claims on the merits; and second, that the NRAB failed to conform itself to matters within its jurisdiction. To BRS, when a party brings a dispute before a district court arguing that dispute is major, then that dispute is not officially major or minor until the court decides it so; once the court decides the matter is minor, then the arbitration panel is required to address the matter on the merits. BRS further argues that, because BRS's underlying claim was not minor until the 2020 grant of summary judgment, then the sixty-day clock did not start running until the date of summary judgment; thus, when the neutral arbitrator dismissed BRS's claim as untimely, it was abdicating its responsibility to decide an issue for which it had mandatory and exclusive jurisdiction in violation of 45 U.S.C. § 153 First(q). In making these arguments, BRS relies heavily on Conrail.

CSX counters that the NRAB complied with the requirements of the RLA, and conformed itself to matters within its jurisdiction. See CSX MSJ at 7-13. CSX relies on Sheehan in making its arguments, along with Sheehan and Union Pacific R.R., NRAB Fourth Division, Award 3045 (O'Brien 1974), Brenda Williams and National R.R. Passenger Corp., NRAB Third Division, Award 25130 (Vaughn 1984), and PSA Airlines, Inc. and Ass'n of Flight Attendants – CWA, Grievance No. 25-99-02-24-09 (Conway 2010). See, e.g., SAR0075; Award at 3.

BRS interprets the Conrail decision as meaning that once a court decides a dispute is minor, that the arbitral panel must take up the case. See BRS MSJ at 13 ("under controlling

16

Supreme Court precedent, once this Court determined … that the issue presented to it… was therefore a minor dispute that had to be resolved in arbitration, it was the NRAB's statutory duty to decide the dispute."). BRS further characterizes <u>Conrail</u>'s approach to major/minor dispute-naming as a "reclassification" process, whereby "when a union files [a] complaint asserting a major dispute, and the carrier contends the dispute is minor, the dispute is major until a court decides it is minor." <u>Id.</u> at 15. Therefore, under BRS's interpretation, the sixty-day clock should not have started until the 2020 district court decided whether the dispute was minor. <u>Id.</u>; <u>see also</u> Award at 5 (BRS "contends that until this [major/minor] determination was made, a claim under the arbitration system would have been premature"). CSX disputes BRS's interpretation of <u>Conrail</u>, arguing that BRS "misrepresents the holding from <u>Conrail</u>" because <u>Conrail</u> "never indicates that the initial position is right until proven otherwise, that there is any 'reclassification process,' or that a court's evaluation of the major/minor dispute question somehow tolls contractually agreed upon time limits for pursuing grievances." CSX Opp. at 7. Notably, the NRAB panel disagreed with BRS's interpretation of <u>Conrail</u>, instead finding CSX's citation of <u>Sheehan</u> persuasive. Award at 5.

BRS argues that because <u>Sheehan</u> was decided before <u>Conrail</u>, and because <u>Sheehan</u> dealt with a state court litigation, rather than a district court litigation, <u>Sheehan</u> is not binding as to whether pursuing a major/minor finding in district court tolls[1] the time to file a grievance under a collective-bargaining agreement. <u>See</u> BRS Opp./Reply at 7-9, 11. CSX argues that

---

[1] At the January 29, 2025, hearing, BRS indicated it does not believe that pursuing the major/minor finding in district court tolls the time to file a grievance. Rather, BRS argued that pursuing the major/minor finding in district court means that the grievance does not become ripe until after that finding is made (<u>i.e.</u>, the sixty-day clock does not start until the finding is made). The court uses "tolls" in this sentence as shorthand for this argument.

Sheehan "remains good and controlling law, since Conrail and Sheehan deal with entirely distinct legal issues and Conrail in no way overrules or modifies the holding in Sheehan." CSX Reply at 6.

The question then is whether there are any grounds to vacate the award when considering the parties' arguments regarding Conrail and Sheehan. The court finds that there are not. Despite BRS's interpretation of Conrail, the court is not persuaded that there are grounds before it on which to vacate the arbitral award. BRS cites a number of cases demonstrating the district court's power to reverse an arbitral award. See BRS MSJ at 8-10, 14; see also supra §III.A at 11-15 (discussing cases reversing an arbitral award). Yet, BRS's cited cases present circumstances distinct from those in the case at bar. For example, Baltimore & Ohio R.R. Co. is not persuasive, as BRS's issue with the arbitral panel award in the instant case arises from the NRAB's alleged refusal to exercise jurisdiction, rather than the NRAB's refusal to grapple with the terms of the collective bargaining agreement. Similarly, UMWA is distinct because it dealt with an award that contravened the collective bargaining agreement's plain language, rather than an award that applies the language of the collective bargaining agreement as in the instant case. Continental Airlines and BNSF are distinguishable as they dealt with arbitral panels that failed to abide by contract language, rather than an issue of applying or interpreting contract language, as is the case here. Additionally, BRS cites UPRC for the idea that "[b]y refusing to adjudicate cases on the false premise that it lacked power to hear them, the NRAB panel failed 'to conform, or confine itself,' to the jurisdiction Congress gave it." BRS MSJ at 14 (quoting UPRC at 86). Yet, UPRC too is distinguishable—the UPRC arbitral rule regarding conferencing being noted in the evidentiary record is distinct from the instant

case's negotiated statute of limitations, and the UPRC panel member flagging the issue sua sponte is distinct from CSX arguing the timeliness issue to the NRAB in the instant case.

The court appreciates BRS's argument that the NRAB failed to conform itself to its jurisdiction by failing to arbitrate the case on the merits, but the court finds that the Award hinges on an interpretation of the agreement, for which the NRAB confined itself to the scope of its jurisdiction, and for which the court does not exercise review power. See Norfolk & W. Ry. Co., 17 F.3d at 700 ("an award that ignores the plain and unambiguous language of the arbitration contract does not 'draw its essence' from the agreement, and may therefore be overturned under the RLA… But '[a]s long as the arbitrator is even arguably construing or applying the contract,' the arbitrators' award must not be disturbed." (internal citations omitted)). The NRAB explicitly took up jurisdiction of the case. See Award at 2 ("This Division of the Adjustment Board has jurisdiction over the dispute involved herein."); id. at 6 ("This Board's jurisdiction arises from the collective bargaining agreement and we have no power to alter or ignore provisions negotiated by the parties.").[2] The NRAB evaluated the parties' arguments, including the parties' respective interpretations of Conrail and Sheehan. See id. at 4-5. The NRAB then found it could not ignore the sixty-day limitation in the agreement. See id. at 6. In other words, the NRAB did what it was statutorily obligated to do,

---

[2] BRS argues that the NRAB erred as a matter of law through stating that its jurisdiction "arises from the collective bargaining agreement," as the NRAB's jurisdiction arises from the RLA. See BRS Opp./Reply at 11-12. CSX replies that "even if the Adjustment Board's statement that it derived its jurisdiction from the CBA was an error of law, an error of law is not grounds to overturn an arbitration award." CSX Reply at 3-4 (citing Richmond, Fredericksburg & Potomac R.R. Co. v. Transp. Comm'n Int'l, 973 F.2d 276, 281 (4th Cir. 1992)). CSX further argues that "even if the Adjustment Board made a misstatement of law, it did exercise jurisdiction, and its decision was not impacted by what it believed to be the source of its jurisdiction." Id. The court agrees with CSX. The Award by the NRAB panel does not appear to suffer from an incorrect understanding of the panel's jurisdiction, despite the NRAB incorrectly stating the source of its jurisdiction.

and applied the language of the agreement to the issue at hand. Further, though the court is
sympathetic to BRS's interpretation of Conrail, the interpretation is not supported by the text
of the agreement, see SAR0091-92, nor yet by other courts' interpretation of Conrail.[3] The
court thus lacks grounds to vacate the arbitral award in this case.

### B.    Judicial Estoppel

BRS argues that CSX should be judicially estopped from arguing that the NRAB
correctly denied jurisdiction. BRS bases this argument around CSX arguing in the 2020 district
court case that the underlying issue was a minor dispute subject to mandatory arbitration, but
CSX later arguing to the NRAB that the Board lacked jurisdiction to decide the dispute
because the claim was untimely filed. See Petition ¶¶ 21-23; BRS MSJ at 18-23. CSX responds
that judicial estoppel is not applicable because (1) it is not grounds to vacate the arbitration
decision; (2) CSX has never argued the NRAB lacked jurisdiction; and (3) even if it were
applicable, CSX does not meet the factors enumerated in New Hampshire v. Maine, 532 U.S.
742 (2001). See CSX Opp. at 9-13. BRS clarifies that:

> The Union does not contend that the Award must be vacated because of judicial
> estoppel but, rather, that CSX[] is judicially estopped from defending the Award on the
> basis that the NRAB lacked jurisdiction or authority to decide the contract
> interpretation dispute because it was filed more than 60 days after the events giving rise
> to the dispute (but within 60 day of this Court's decision), because CSX[] argued and
> prevailed before this Court in arguing that the dispute must be resolved in arbitration.

---

[3] CSX's counsel represented at the January 29, 2025, hearing on this matter that they were unable to find a
citation supporting BRS's interpretation of Conrail. BRS's counsel made similar representations, noting that
BRS was not aware of a case specifically accepting BRS's interpretation of Conrail, and agreed with the court
that this was potentially a case of first impression. The court notes that it has not been able to find a case
supporting BRS's interpretation of Conrail, and appears to be without guidance from the higher courts on this
issue.

BRS Opp./Reply at 13-14. CSX replies that "CSX did not mislead this Court… There is simply nothing inconsistent with saying that the matter must be resolved by an arbitrator, and not the Court, and raising procedural, contract-based defenses for the arbitrator to consider." CSX Reply at 7.

In its ex parte submission to the NRAB panel, CSX does not appear to argue that NRAB lacks jurisdiction to hear the claim; rather, CSX argues the claim should be dismissed because it was untimely. See SAR0075-78. CSX also addressed judicial estoppel in its ex parte submission, arguing, "the sole question in the federal case was who should resolve the dispute, not the scope of the Carrier's [CSX's] defenses to the Organization's [BRS's] claims." Id. at SAR0076. CSX cites Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co., 879 F.3d 754 (7th Cir. 2017) (hereinafter "BLET") in support of its submission. Id. In BLET, the Seventh Circuit affirmed the judgment of the district court, holding that a dispute was minor. 879 F.3d at 760. In so doing, the Seventh Circuit noted:

> We stress again that we are not resolving these disputes. We conclude only that the arguments on the Railroad's side are better than frivolous. The Union has the right to file a claim through the usual "minor dispute" procedures, as the Railroad concedes, and by the same token the Railroad will have the right to raise any appropriate defenses. It will be up to the arbitrator to decide which position carries the day.

Id. at 759-760 (emphasis added).

"Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." New Hampshire, 532 U.S. at 749 (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)). New Hampshire discusses three main factors that underpin a judicial estoppel finding: first, "a party's later position must be 'clearly inconsistent' with its earlier

21

position"; second, "whether the party has succeeded in persuading a court to accept that
party's earlier position, so that judicial acceptance of an inconsistent position in a later
proceeding would create 'the perception that either the first or the second court was misled'";
and third, "whether the party seeking to assert an inconsistent position would derive an unfair
advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 750-
751; see also Martineau v. Wier, 934 F.3d 385 (4th Cir. 2019) (applying the New Hampshire
factors).

In the 2020 litigation, CSX argued that the district court "lacks jurisdiction to determine
whether CSX[] violated the contract" and so any merits issues "are for an arbitrator to
analyze." ECF No. 21, No. 5:20-cv-16 at 14-16. Before the NRAB, CSX did not argue that
the NRAB lacked jurisdiction to decide the issues. See SAR0065-88. In the present litigation,
CSX does not argue that the NRAB lacked jurisdiction. See generally CSX MSJ; CSX Opp.
What BRS views as inconsistent is CSX arguing in the 2020 litigation that the matter must be
arbitrated, but then, before the NRAB, arguing the claim was time barred. This is not a
contrary position under the New Hampshire factors. CSX claiming before the NRAB that the
claim was time-barred is not inconsistent with what CSX argued in the 2020 litigation as it is
the type of contract- and merits-based argument that CSX argued should be decided by the
arbitrator. See ECF No. 21, No. 5:20-cv-16 at 14-16. Further, the district court in 2020 does
not appear to have been misled; rather, the district court held based on the requirements of
the RLA and the major/minor dispute issue. BRS's failure to file a grievance through the
procedure enumerated in the agreement as a failsafe against losing in the 2020 district court

proceeding does not mean CSX gained an unfair advantage. Rather, it is a litigation choice that BRS made.

BRS's argument that "if the union filed a claim within the 60 day period while the litigation was pending in order to preserve time limits in case the court ultimately [held] the dispute to be minor, the carrier would cite the filing of a claim as an admission that the dispute was minor" is well-noted. See BRS MSJ at 23 n.3. However, BRS primarily argues that the risk of so-filing would result in arguments a carrier would make, not a decision or award a judge or neutral arbitrator would. See id.; BRS Opp./Reply at 16-17. In the absence of support demonstrating a judge being negatively swayed by the filing of a protective grievance alongside litigation, BRS's argument remains hypothetical.

## IV.    Conclusion

For the reasons stated herein, the motion for summary judgment filed by CSX, ECF No. 24, is **GRANTED**, and the motion for summary judgment filed by BRS, ECF No. 6, is **DENIED**. An appropriate order will be entered.

Entered: March 20, 2025

Michael F. Urbanski
Senior United States District Judge